UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR K.,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　Defendant. | Case No.: 3:20-cv-00673-LAB-RBM<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT & DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[Docs. 19, 20] |

## I.　INTRODUCTION

On September 12, 2020, Plaintiff Oscar K. ("Plaintiff") filed an amended complaint under 42 U.S.C §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") ("Defendant" or "Commissioner") denying Plaintiff's application for disability insurance benefits and

///
///
///

supplemental security income under Titles II and XVI of the Social Security Act ("the Act").[1] (Doc. 8.)

Before the Court are: (1) Plaintiff's motion for summary judgment, seeking remand to the SSA for further proceedings (Doc. 19); Defendant's cross-motion for summary judgment (Doc. 20); and Plaintiff's reply (Doc. 21).[2]

The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c). Considering the papers, the Administrative Record ("AR"), the facts, and the applicable law, it is respectfully recommended that Plaintiff's motion for summary judgment be **DENIED**, Defendant's cross-motion for summary judgment be **GRANTED**, and the Administrative Law Judge's ("ALJ") decision be **AFFIRMED**.

## II.   BACKGROUND & PROCEDURAL HISTORY

In August of 2010, Plaintiff developed cervical dystonia, also known as spasmodic torticollis, a rare neurological disorder that originates in the brain. (Doc. 19–1 at 4.) The neurological disorder causes Plaintiff's neck to lean to the right resulting in involuntary muscle spasms. (*Id.*)

On September 13, 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act wherein Plaintiff alleged his disability began on August 1, 2010.[3] (AR, 18.) The SSA denied

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is therefore substituted for Andrew M. Saul as Defendant. *See* 42 U.S.C. § 405(g); FED. R. CIV. P. 25(d).

[2] As set forth in the briefing schedule (Doc. 18), the undersigned ordered Plaintiff to file a merits brief pursuant to Civil Local Rule 7.1(e)(6)(e). Plaintiff, however, titled the brief "Plaintiff's Motion for Summary Judgment." (Doc. 19.) Hereafter, Plaintiff's brief will be referred to as a merits brief. The undersigned ordered Defendant to file an opposition brief; however, Defendant titled the brief "Cross-Motion for Summary Judgment." (Doc. 20.) Hereafter, Defendant's brief will be referred to as Defendant's Opposition.

[3] All AR citations refer to the number on the bottom right-hand corner of the page, rather than page numbers assigned by CM/ECF.

Plaintiff's claims initially on February 6, 2018, and upon reconsideration on April 26, 2018. (*Id.*) On May 14, 2018, Plaintiff requested a hearing before an ALJ, which was held on April 8, 2019. (*Id.*) At the April 8, 2019 video hearing, Plaintiff appeared from National City, California, with counsel. (*Id.*) The ALJ presided over the hearing from Albuquerque, New Mexico, and elicited testimony from Plaintiff and Katie T. Macy-Powers, a vocational expert ("Vocational Expert"), who appeared by telephone. (*Id.*)

On May 16, 2019, the ALJ issued a written decision finding Plaintiff was not disabled as defined in the Act from August 1, 2010 through the date of the decision. (AR, 18–19.) On July 3, 2019, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision became the final decision of the Commissioner pursuant to 42 U.S.C. § 405(h). (Doc. 19–1 at 4–5.) Plaintiff filed a complaint in this Court on April 7, 2020, which was dismissed with leave to amend. (Docs. 1, 7.) Plaintiff filed an amended complaint on September 12, 2020. (Doc. 8.)

### III.   THE ALJ'S FINDINGS

In the decision, the ALJ determined Plaintiff met the insured status requirements of the Act through June 30, 2014. (AR, at 20.) The ALJ then followed the five-step sequential evaluation process to determine whether Plaintiff is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 1, 2010. (AR, at 20.)

At step two, the ALJ found Plaintiff suffered from the following severe impairments: cervical degeneration and torticollis. (*Id.*) As to Plaintiff's mental impairments, the ALJ found Plaintiff's medically determinable mental impairment of depression and anxiety did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and therefore, considered the impairments as non-severe. (*Id.*, at 18.) In making this finding, the ALJ considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders known as the "paragraph B" criteria and found no limitations in understanding, remembering, or applying information; no

3

limitations in interacting with others; mild limitations in Plaintiff's ability to concentrate, persist, or maintain pace; and no limitations in Plaintiff's ability to adapt or manage himself. (*Id.*, at 21.)

In analyzing the mental impairment, the ALJ gave significant weight to non-examining state agency psychological evaluators, Phaedra Caruso-Radin, Psy.D. ("Dr. Caruso-Radin") and Eugene Campbell, Ph.D. ("Dr. Campbell"), who classified Plaintiff's depression as non-severe and found no significant psychological impairments. (*Id.*, at 22.) The ALJ gave significant weight to psychological consultative examiner, Dan Whitehead, Ph.D. ("Dr. Whitehead"), who found Plaintiff was alert, fully oriented, well groomed, and functioning at a higher level. (*Id.*)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR, at 19.)

Next, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), with certain exceptions set forth below:

> Climbing of ramps and stairs, balancing, stooping (bending at the waist), crouching (bending at the knees) and kneeling must be limited to frequently, while the climbing of ladders, ropes, and scaffolds and crawling must be further limited to occasionally. Within the assigned work area, there must be less than occasional, seldom to rare, exposure to hazards, such as machinery and heights.

(AR, at 23.)

At step four, the ALJ found Plaintiff could perform past relevant work as a storage facility clerk (a light exertion job) and customer order clerk (a sedentary exertion job). (*Id.*, at 25–26.)

For purposes of the step four analysis, the ALJ gave significant weight to a medical opinion from orthopedic consultative examiner, David Payne, M.D. ("Dr. Payne") who diagnosed Plaintiff with chronic torticollis and opined Plaintiff was capable of medium

exertion work with frequent postural movements. (*Id.*, at 24.) The ALJ summarized Dr. Payne's findings stating, "[Plaintiff] has an obvious rightward tilt of the head along with tenderness and a decreased range of motion; [h]owever, neurologically, the [Plaintiff] has full motor strength, intact sensation and normal reflexes." (*Id.*, at 25.) The ALJ noted "these findings remained unchanged even with the new diagnosis of cervical radiculopathy." (*Id.*)

The ALJ reviewed Plaintiff's treatment record, which included notes from treating provider, Clarissa Castillo, P.A. ("Castillo"). (*Id.*, at 24.) Castillo reported Plaintiff had a history of neck pain from torticollis with ongoing pain, muscle spasms, and referred Plaintiff to pain management. (*Id.*)

The ALJ gave significant weight to Plaintiff's pain specialist, Jeffery Chen, M.D. ("Dr. Chen"), who reported Plaintiff was generally healthy, "alert, fully oriented and in no distress" despite Plaintiff reporting extreme pain and difficulties with activities. (*Id.*) Additionally, Dr. Chen reported an obvious rightward tilt of Plaintiff's head, but no neurological deficits in strength or sensation. (*Id.*) Lastly, Dr. Chen assessed cervical dystonia and radiculopathy but noted that Plaintiff reported extended relief at levels of greater than 50% after repeat Botox injections. (*Id.*)

As for opinion evidence, the ALJ gave substantial weight to non-examining state agency physical evaluators, Albert Lizarraras, M.D. ("Dr. Lizarraras"), and James Wright, M.D. ("Dr. Wright"), who found Plaintiff's condition to be severe; however, they both opined Plaintiff was capable of medium exertion with frequent to occasional postural movements. (*Id.*)

At step five, the ALJ then compared Plaintiff's RFC with the physical demands of Plaintiff's past relevant work as a storage facility clerk and customer order clerk. (*Id.*, at 26.) The ALJ found Plaintiff able to return to this type of past work at a gainful level as it is generally performed in the national economy. (*Id.*)

Although the ALJ found Plaintiff capable of performing past relevant work, she made alternative findings as to Plaintiff's ability to perform other jobs. (*Id.*, at 27.)

Considering Plaintiff's age,[4] education, work experience, and RFC, the ALJ found that Plaintiff could perform a significant number of other jobs in the national economy. (*Id.*) The ALJ gave significant weight to the Vocational Expert's testimony during which she asked whether other work was available to a hypothetical individual with Plaintiff's same age, vocational and educational background, and RFC. (*Id.*, at 53.) The Vocational Expert provided three examples of medium unskilled exertion jobs, which consisted of industrial cleaner, linen room attendant, and salvage labor. (*Id.*, at 53–54.) Then, reducing the exertion level to light, the Vocational Expert provided three examples of light unskilled jobs, which consisted of housekeeping cleaner, cashier, and mail clerk. (*Id.*, at 54.) Based on this testimony, the ALJ found Plaintiff capable of making a successful adjustment to other work in the national economy. (*Id.*, at 28.) In sum, the ALJ found Plaintiff was not disabled, as defined in the Act, from August 1, 2010, through the date of the ALJ's decision. (*Id.*)

## IV.   ISSUES IN DISPUTE

As set forth in the parties' briefing, the disputed issues are as follows:

1.   Whether the ALJ addressed the combined physical and mental limitations of cervical dystonia characterized by involuntary muscle contractions, with anxiety, fatigue? (Doc. 19–1 at 14; Doc. 20 at 5.)

2.   Whether the ALJ properly evaluated Plaintiff's RFC and subjective claims of impairment? (Doc. 19–1 at 19–21; Doc. 20 at 10–12.)

3.   Whether the ALJ met her burden of proof at step five where she incorrectly cites Plaintiff's age in her written decision? (Doc. 19–1 at 14; Doc. 20 at 12.)

---

[4] The ALJ's decision states Plaintiff "was born on April 1, 1966, and 44 years old" at the time of the decision. (AR, at 27.) The April 8, 2019 hearing transcript indicates the ALJ asked Plaintiff, "[h]ow old are you?" and Plaintiff responded, "fifty-three [53]." (*Id.*, at 38.) Plaintiff clarifies that he was 53 years old at the time of the decision, and the ALJ calculated his age as of the date of the onset of his alleged disability. (Doc. 19–1 at 22–25.) Plaintiff contends this error warrants remand. (*Id.*)

6

## V.     STANDARD OF REVIEW

The Act provides for judicial review of a final agency decision denying a claim for disability benefits in federal district court. 42 U.S.C. § 405(g). "As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). In reviewing whether the ALJ's decision is supported by substantial evidence, the court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter*, 504 F.3d at 1035 (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citations omitted). When the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Stated differently, when the evidence "can reasonably support either affirming or reversing a decision, [the court] may not substitute [its] judgment for that of the [ALJ]"; rather, the court only reviews "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

///

# VI. DISCUSSION

## A. Combined Impairments

Plaintiff contends the ALJ's decision should be reversed and remanded, arguing "[t]he ALJ's decision is not supported by substantial evidence as it did not review the combination of impairments and include those limitations in the residual functional capacity finding . . . ." (Doc. 19–1 at 4.) It is unclear whether Plaintiff contests the step-three analysis, wherein the ALJ must consider the combination of impairments, or whether Plaintiff contests the step-four RFC analysis. Therefore, the undersigned will address both arguments. Defendant counters that the ALJ discussed the pertinent evidence concerning Plaintiff's mental and physical functioning and explained why she concluded that Plaintiff's RFC best reflected the weight of the evidence. (Doc. 20 at 10.) Defendant argues the ALJ's findings were proper, supported by substantial evidence, and warrant affirmance. (*Id.* at 6.)

As outlined below, the ALJ did not err as a matter of law, because she properly considered Plaintiff's impairments in combination at step three of the sequential evaluation. Moreover, the RFC determination is supported by substantial evidence.

### i. *Considering Impairments in Combination is Limited to Step Three of the Five-Step Sequential Analysis*

The requirement to consider impairments in combination is limited to step three. *See Lester v. Chater*, 81 F.3d 821, 828–29 (9th Cir. 1995) (citing 20 C.F.R. § 404.1526(a)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). It does not extend to the RFC analysis. *See Lester*, 81 F.3d at 828; *see also* 20 C.F.R. § 404.1526(a). In evaluating plaintiffs with multiple impairments, the ALJ "must consider 'whether the combination of . . . impairments is medically equal to a listed impairment.'" *Lester*, 81 F.3d at 829. But the ALJ "is not required to discuss the combined effects of a [plaintiff]'s impairments or compare them to any listing in an equivalency determination, unless the [plaintiff] presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683 (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (holding ALJ's failure to consider equivalence

was not reversible error, because the plaintiff did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment)); *Aguilar v. Colvin*, 19-CV-891-BEN-NLS, 2014 WL 1653109, at *6 (S.D. Cal. Apr. 22, 2014).

Plaintiff does not offer any caselaw to support extending the requirement to consider impairments in combination to the RFC analysis. Instead, Plaintiff cites *Lester*, which reiterates the requirement to consider impairments in combination at the step-three-listings stage. (Doc. 19–1 at 15, fn. 1 (citing *Lester*, 81 F.3d at 821).). In *Lester*, the Court held that "physical and mental impairments are so inextricably linked, the [ALJ] must consider whether these impairments *taken together* result in limitations equal in severity to . . . **the listings**." *Lester*, 81 F.3d at 829–30 (emphasis added). Pursuant to *Lester*, the ALJ was not required to consider Plaintiff's impairments in combination in her RFC analysis. *Id.*, at 821. Plaintiff also cites Social Security Ruling 85–16, which states, "[w]here there is anxiety caused by pain both need to be addressed in the RFC." (Doc. 19–1 at 18 (citing SSR 85–16).). Additionally, Plaintiff cites *Beecher v. Heckler*; however, this case is inapplicable as the ALJ in *Beecher* entirely failed to consider the claimant's psychological impairments. (Doc. 19–1 at 15, fn. 1 (citing *Beecher*, 756 F.2d 693, 694–95 (9th Cir. 1985).). As outlined below, the ALJ did address Plaintiff's anxiety caused by pain and found no psychological disturbances despite Plaintiff's complaints of extreme pain. *See infra* pp. 9–16, section VI.B. As such, the ALJ did not err as a matter of law in this regard.

Even assuming *arguendo* Plaintiff contends the ALJ erred at step three, he failed to present evidence in an effort to establish equivalence to a *listing*. *See Burch*, 400 F.3d at 683. Therefore, there is no error in the ALJ's decision as to the step-three analysis.

B. <u>ALJ's RFC Analysis & Evaluation of Plaintiff's Subjective Claim of Pain</u>

Plaintiff generally challenges the RFC determination because it did not address the combined effect of Plaintiff's anxiety, pain, fatigue, and Plaintiff's ability to sustain work. (Doc. 19–1 at 17.) Plaintiff also contends the ALJ's decision should be reversed and remanded for discrediting Plaintiff's testimony on the severity of symptoms without setting forth specific, clear and convincing reasons for doing so. (Doc. 19–1 at 19–25 (citing

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *Reddick v. Chater*, 157 F.3d at 715; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).). Defendant argues the ALJ specifically cited to the record when discounting Plaintiff's allegations of pain. (Doc. 20 at 10.)

If a plaintiff's impairments do not meet or equal a listed impairment, then the ALJ will assess the RFC. 20 C.F.R. § 404.1520(e). In analyzing the RFC, "an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms . . . that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see* SSR 96–8p; *see also* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Careful consideration must be given to "any evidence about symptoms, 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'" *Robbins*, 466 F.3d at 883 (citing SSR 96–8p). The RFC is used to determine if the plaintiff can perform past relevant work or adjust to other work. 20 C.F.R. § 404.1520(e).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal citation omitted). First, the ALJ determines "whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* If the claimant presents such evidence to satisfy the first step, an ALJ can reject the claimant's subjective allegations of impairment only upon (1) finding evidence of malingering, or (2) expressing "specific, clear and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina*, 674 F.3d at 1112); *see Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). In addition to objective medical evidence, an ALJ must consider each of the factors set forth in 20 C.F.R. § 404.1529 to assess the credibility of pain symptoms. *Willyard v. Colvin*, 633 F. App'x 369, 370 (9th Cir. 2015). In assessing credibility, the ALJ may consider the consistency between claimant's allegations of

disabling impairments with the objective medical evidence, claimant's daily activities, and claimant's ability to treat symptoms with medication. *E.g., Lingenfelter*, 504 F.3d at 1040.

As outlined below, in assessing Plaintiff's RFC and rejecting Plaintiff's subjective allegations of pain, the ALJ relied upon four categories of evidence: (1) objective medical evidence; (2) medical opinions; (3) Plaintiff's conservative treatment; and (4) Plaintiff's activities.

### i. Objective Medical Evidence

At the outset of the ALJ's RFC determination, the ALJ analyzed the objective medical evidence and compared it with Plaintiff's subjective allegations of pain. (AR, at 23–24.) The ALJ cited physical examination notes, magnetic resonance imaging ("MRI"), and treatment notes and opined the foregoing generally did not support Plaintiff's allegations of disabling pain. (*Id.*, at 24.)

The ALJ cited orthopedic consultative examination notes by Dr. Payne, which revealed Plaintiff "was well developed and nourished and in no apparent distress" and had "full motor strength, intact sensation and normal reflexes." (*Id.*) Dr. Payne found no tenderness and other abnormalities in the thoracolumbar spine. (*Id.*) The ALJ noted Dr. Payne diagnosed Plaintiff with chronic torticollis and opined Plaintiff was capable of medium exertion, such as lifting and carrying fifty pounds occasionally and walking six hours out of an eight-hour workday. (*Id.*, at 25, 529.)

The ALJ also cited to Plaintiff's pain specialist Dr. Chen's physical examination notes, which revealed Plaintiff was generally healthy despite reporting a "pain score of 9/10" and appeared "alert, fully oriented and in no distress." (*Id.*, at 24, 618.) Although an MRI revealed "multiple levels of degenerative changes with moderate to severe foraminal and central stenosis at C3–4, C4–5 and C5–6," there were no neurological deficits in strength or sensation. (*Id.*, at 24, 616.) Dr. Chen's records also revealed Plaintiff reported extended relief at levels of greater than 50% after receiving Botox injections in 2019. (*Id.*, at 24, 637.)

/ / /

11

The ALJ also examined Plaintiff's treatment records with Castillo. Castillo reported Plaintiff had a history of neck pain from torticollis with ongoing pain and muscle spasms and noted Plaintiff's physical conditions were causing him anxiety. (*Id.*, at 24.) However, the ALJ also noted Castillo's report of an unremarkable physical examination and Plaintiff's report that Botox injections were very helpful in the past. (*Id.*, at 24, 361.)

The ALJ properly relied upon the above evidence—lack of tenderness, lack of abnormalities in the thoracolumbar spine, lack of neurological deficits in strength or sensation, and lack of psychological disturbances—in concluding it did not support Plaintiff's allegations of disabling pain. (AR, at 24, 526, 529, 616); *Burch*, 400 F.3d at 681 (upholding ALJ's rejection of claimant's allegations of severe low back pain when imaging showed only mild degenerative disc disease and dextroscoliosis with no apparent disc herniation or nerve impingement). A lack of objective medical findings to support a claim of disability is a factor the ALJ may consider in discrediting Plaintiff's allegations. *Burch*, 400 F.3d at 681 (stating, "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). But the ALJ cannot rely entirely on a lack of objective medical evidence to reject subjective allegations of pain: she must consider other evidence as well. *Burch*, 400 F.3d at 681; *see also Willyard*, 633 F. App'x at 370. Thus, the Court must examine the other evidence relied upon by the ALJ.

  ii. *Medical Opinions*

The ALJ properly cited medical opinion evidence as a specific, clear and convincing reason to reject Plaintiff's subjective allegations. Specifically, the ALJ examined opinions of examining and non-examining state agency evaluators, Dr. Lizarraras, Dr. Wright, and orthopedic consultative examiner, Dr. Payne, all of whom opined Plaintiff was able to perform work at the medium exertion level. (AR, at 25.) Additionally, the ALJ relied on the opinions of examining and non-examining psychological evaluators, Dr. Caruso-Radin, Dr. Campbell, and Dr. Whitehead, all of whom opined Plaintiff only suffered from "mild limitations in concentration, persistence and pace." (*Id.*, at 22.)

To determine disability status, the ALJ considers medical opinions with the rest of the relevant evidence. 20 C.F.R. § 416.920. The ALJ may cite medical opinions as specific, clear and convincing reasons to reject Plaintiff's subjective allegations of pain. *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (ALJ's reliance on medical opinion as to plaintiff's ability to perform sedentary work is a specific reason to discredit plaintiff's subjective allegation of pain); *see also Skuja v. Colvin*, 671 F. App'x 463, 464–65 (9th Cir. 2016) (ALJ's finding of inconsistencies between plaintiff's symptom testimony and opinions of several medical examiners is a clear and convincing reason to discredit plaintiff's subjective allegations).

The ALJ found the opinion of Dr. Lizarraras persuasive, who opined as to Plaintiff's exertional limitations (e.g., occasionally carry 50 pounds, frequently carry 25 pounds, stand and/or walk for about six (6) hours in an eight (8)-hour day), and noted "[n]o functionally significant neurological deficits." (AR, at 25, 68–69.) The ALJ also assigned substantial weight to the opinion of Dr. Wright, who opined Plaintiff was capable of medium exertion and found Plaintiff's treatment with Botox effective. (*Id.*, at 25.) As to the orthopedic consultative examiner's opinion finding Plaintiff capable of medium exertion with frequent postural movements, the ALJ assigned substantial weight to the opinion. (*Id.*)

As to Plaintiff's mental functioning, the ALJ stated the opinions of non-examining state agency evaluators supported his residual functional capacity findings. (*Id.*, at 25.) Non-examining state agency psychological evaluators Dr. Caruso-Radin and Dr. Campbell found Plaintiff's depression to be non-severe and opined Plaintiff's anxiety did not cause any significant difficulties with functioning. (*Id.*, at 22.) In reviewing the record as a whole, the ALJ also assigned substantial weight to the opinion of Dr. Whitehead, who diagnosed Plaintiff with depression and borderline intellectual functioning but also opined the diagnosis resulted in no significant impairment in mental functioning. (AR, at 22, 520); *see Andrews*, 53 F.3d at 1039 ("[t]o determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole."). This opinion was consistent with the opinions of the non-examining state agency psychologists finding no

significant issues with concentration, memory, or comprehension. (AR, at 22.) Therefore, the consistent medical opinion evidence supports the ALJ's conclusion of no severe psychological impairments. (*Id.*)

In sum, the ALJ gave specific, clear and convincing reasons for rejecting Plaintiff's subjective allegations as inconsistent with medical opinions. *Moncada*, 60 F.3d at 524; *Skuja*, 671 F. App'x at 464–65.

### iii. Plaintiff's Conservative Nature of Treatment

The ALJ properly cited Plaintiff's conservative treatment as a specific, clear and convincing reason to reject his subjective allegations of impairment. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51); *see also Lingenfelter*, 504 F.3d at 1040. Impairments that can be controlled effectively with medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see* 20 C.F.R. § 404.1529(c)(3)(iv) (medications may be considered in assessing claimant's subjective symptoms).

Here, Plaintiff indicated his level of pain was 10/10 on a pain scale. (AR, at 24.) During the April 8, 2019 hearing, the ALJ asked Plaintiff if he received any relief from Botox treatments and Plaintiff testified the "Botox treatments are limited to three-month intervals by the insurance" and he received "approximately ten to fifteen percent" relief. (*Id.*, at 48.) Despite Plaintiff's report, the ALJ noted records where Dr. Payne and Castillo indicate Botox injections offered "extended relief at levels of greater than 50% and for greater than three months" and "were very helpful in the past." (*Id.*, at 24, 361.) In addition to Botox, the ALJ noted other conservative treatment "consisting of . . . muscle relaxants and pain medication." (*Id.*, at 24, 648.)

Although the ALJ did not address whether Botox injections are of *conservative* nature, Botox injections have been considered a conservative form of treatment. *See Marshall v. Berryhill*, No. 16-cv-00666-BAS-PCL, 2017 WL 2060658, at *14 (S.D. Cal.

May 12, 2017) (finding that taking prescribed medications, receiving trigger steroid injections for plaintiff's fibromyalgia, and receiving Botox injections for plaintiff's migraines were conservative in nature). The ALJ's citation to various records which indicated Plaintiff managed symptoms with conservative treatment supports her adverse credibility finding.

### iv. Plaintiff's Activities

Daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (emphasis omitted). But the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016; *see also Smolen*, 80 F.3d at 1284, n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). "The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks and alterations omitted). "Only if the level of activity were inconsistent with [the claimant's] claimed limitations would these activities have any bearing on his credibility." *Reddick*, 157 F.3d at 722.

In considering Plaintiff's daily activities, the ALJ found they were not as limiting "as one would expect given the extreme allegations." (AR, at 24.) The ALJ cited Plaintiff's hearing testimony, Plaintiff's function report, and Plaintiff's daughter's third-party function report, which were all consistent with each other. (*Id.* at 23, 36–50, 265–273, 294–301.) All three reports mentioned Plaintiff's chronic torticollis and muscle

spasms, but also acknowledged Plaintiff's ability to perform personal care and household chores. (*Id.*) After reviewing the testimony and statements, the ALJ noted Plaintiff's ability to perform personal care without assistance and household chores such as dusting, mopping, sweeping, vacuuming, laundry, and preparing simple meals. (*Id.*, at 23.) The ALJ also noted Plaintiff can occasionally drive to the grocery store and visit the park three times per month, and care for animals. (*Id.*) Although the ALJ cannot solely rely on Plaintiff's daily activities to discredit Plaintiff's subjective claims, the ALJ may support her analysis with evidence of daily activities to refute Plaintiff's claims of pain. *Garrison*, 759 F.3d at 1016.

As a whole, the ALJ properly offered specific, clear and convincing reasons to reject Plaintiff's subjective allegations of impairment. *Burrell*, 775 F.3d at 1136; *see Benton*, 331 F.3d at 1040. As such, the undersigned finds the ALJ properly assessed Plaintiff's subjective claims of pain by assessing Plaintiff's objective medical evidence, medical opinions, treatment record, and daily activities. *Supra* p. 11–16. Accordingly, it is unnecessary to analyze the "credit-as-true" rule as to awarding benefits. (Doc. 19–1 at 23; Doc. 20 at 13, fn. 7; Doc. 21 at 8.)

### C. Incorrect Age Harmless Error

Plaintiff alleges "[t]he ALJ failed to meet [her] burden of proof at Step Five using the wrong age category." (Doc. 19–1 at 21.) Defendant claims the error is harmless. (Doc. 20 at 12.) Defendant states, "this was not a step-five case—the ALJ decided Plaintiff's claim at step four, when [s]he found that Plaintiff was capable of performing past relevant work . . ." (*Id.*)

In the ALJ's decision, she states Plaintiff "was born on April 1, 1966 and was 44 years old, which is defined as ***an individual closely approaching advanced age***, on the alleged disability onset date." (AR, at 27 (emphasis added).) Plaintiff argues "the ALJ's decision was based in error in evaluating [Plaintiff] as 42 when he in fact was 53 and would

/ / /

/ / /

be presumptively disabled under medical vocational profiles."[5] (Doc 19–1 at 22.) It is Plaintiff's position that, "[b]y using the wrong age category, the ALJ did not use the proper matrix" and that such error is not harmless. (Doc. 21 at 7.)

The Code of Federal Regulations categorizes an individual between the ages of 50–54 as an individual "closely approaching advanced age." 20 C.F.R. § 404.1563(d); 20 C.F.R. § 416.963(d). An individual under the age of 50 is categorized as a "younger person," and in this category, age is not considered to seriously affect an individual's ability to adjust to other work. 20 C.F.R. § 404.1563(c). Here, the ALJ correctly provided Plaintiff's date of birth of April 1, 1966, and applied the correct age category to a 53-year-old by defining Plaintiff as an individual "closely approaching advanced age." (AR, at 27.) Additionally, Plaintiff informed the ALJ he was 53 years old during the April 8, 2019 hearing during which the ALJ asked for Plaintiff's age. (*Id.*, at 38.) The Vocational Expert, who offered opinions as to Plaintiff's ability to perform certain occupations, based her opinions on Plaintiff's stated age of 53. (AR, at 53–54.) Because the ALJ's decision provided Plaintiff's correct date of birth and age category and relied upon the testimony of a Vocational Expert who also made opinions considering Plaintiff's correct age, the ALJ's error was harmless. *See Dattilo v. Berryhill*, 773 F. App'x 878, 882 (9th Cir. 2019) (finding harmless error where the claimant still fell into the "approaching advanced age" category regardless of age used); *see also Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (finding harmless error where the claimant, whether 50 or 53 years old, nonetheless fell within the same category of "closely approaching advanced age."). Therefore, the ALJ's decision is free from error.

## VII.   CONCLUSION

For the reasons given, the undersigned respectfully recommends: (1) Plaintiff's

---

[5] Plaintiff's merits brief states the ALJ evaluated Plaintiff as being 42 years old; however, Plaintiff's reply brief states the ALJ determined Plaintiff to be 43 years old. (Doc 19–1 at 22; Doc. 21 at 7.) Both statements are incorrect as the ALJ listed Plaintiff as 44 years old in her alternative step-five findings. (AR, at 27.)

17

motion for summary judgment be **DENIED**; (2) Defendant's cross-motion for summary judgment be **GRANTED**; and (3) the ALJ's decision be **AFFIRMED**.

This Report and Recommendation is submitted to the United States District Judge Assigned to this case, under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Any party may file written objections with the court and serve a copy on all parties on or before **January 28, 2022**. Any reply to the objections shall be served and filed on or before **February 11, 2022**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATE: January 14, 2022

*[signature]*
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE